[No. 24381. Department One. July 3, 1933.]

THE STATE OF WASHINGTON, *on the Relation of James Johnston, Respondent*, v. WELCH'S MARKET *et al., Appellants.*[1]

*Brown & Weller,* for appellants.

*Luby & Pearson,* for respondent.

MILLARD, J.—Relator, James Johnston, as a stockholder of Welch's Market, a domestic corporation, sought an order requiring the corporation and its pres-

[1]Reported in 23 P. (2d) 569.

ident and manager to show cause why they should not be required

" . . . to permit an inspection of all of the books, papers and records of said corporation having to do with its corporate affairs, and to allow plaintiff to make extracts from such books,"

and why the statutory penalty for refusal to permit such inspection should not be exacted.

The action is based on Rem. Rev. Stat., §§ 3827 and 3828, reading as follows:

"It shall be the duty of the trustee of every company incorporated under this chapter, to keep a book containing the names of all persons, alphabetically arranged, who are or shall be stockholders of the corporation, and showing the number of shares of stock held by them respectively, and the time when they became the owners of such shares, which book, during the business hours of the day, on every day excepting Sunday and the legal holidays, shall be open for the inspection of stockholders and creditors of the company at the office or principal place of business of the company; and any stockholder or creditor of the company shall have the right to make extract from such book, or to demand and receive from the clerk or other officer having the charge of such book, a certified copy of any entry therein, or to demand and receive from any clerk or officer a certified copy of any paper placed on file in the office of the company, and such book and certified copy shall be presumptive evidence of the fact therein stated in any action or proceeding against the company or any one or more of the stockholders." Rem. Rev. Stat., § 3827.

"If at any time the clerk or other officer having charge of such book shall make any false entry, or neglect to make any proper entry therein, or having the charge of any papers of the company shall refuse or neglect to exhibit the same or allow the same to be inspected, or extracts to be taken therefrom, or to give a certified copy of any entry, as provided in the preceding section, he shall be deemed guilty of a misde-

meanor, and shall forfeit and pay to the injured party a penalty of not less than one hundred dollars nor more than one thousand dollars, and all damages resulting therefrom, to be recovered in any action of debt in any court having competent jurisdiction; and for neglecting to keep such book for inspection as aforesaid, the corporation shall forfeit to the people the sum of one hundred dollars for every day it shall so neglect, to be sued for and recovered in the name of the people in the superior court of the county in which the principal place of business of the corporation is located.'' Rem. Rev. Stat., § 3828.

The relator alleged that he, as a stockholder of the corporation, had

'' . . . at various times demanded of the said corporation and of the defendant, Louis C. Burkhardt, as its president and managing officer, the right to inspect the books, papers and records of the corporation having to do with its corporate affairs, and has particularly demanded the right to inspect the book or books containing the names and addresses of all persons who are stockholders in the corporation and showing the number of shares of stock held by them, and the time when they became the owner of such stock, and the right to inspect the books of accounts. That . . . the defendants have refused to allow such inspection or to produce such books or papers for inspection.''

Conceding the right to inspect the books by anyone except a Mr. Reinhard, the corporation and its president and manager answered, denying that Johnston had at any time asked to see the books, or any of them, of the corporation, ''and further deny that the right to see them was ever denied him.'' The affirmative defense pleaded was that Johnston's application to inspect the books was not made in good faith, but was made for the purpose of compelling defendants to purchase his stock; that

" . . . plaintiff asked defendant Burkhardt how much he would pay him for his said stock; plaintiff then sent a public accountant (a Mr. Reinhard) to defendants, demanding the right to make an audit of the books; plaintiff knew that this particular public accountant would not be acceptable to defendants, or either of them.''

Hearing was had, and an order was entered granting Johnston the right to have an audit made of all of the books and records of the corporation by any auditor he might select, except Mr. Reinhard or some one associated with or employed by Mr. Reinhard. The order reserved for the hearing on the merits the question of penalty and the ownership of a certain number of shares of stock of the corporation.

The court found on the trial of the cause on the merits that Johnston was the owner of the shares of stock in question; that the demand for an inspection of the books was made in good faith; that, prior to the commencement of this action, Johnston demanded of the president and managing officer of the corporation,

" . . . upon three different occasions, the right to inspect the books, papers and records of the corporation, showing the record of its financial transactions and its financial condition, and also requested an inspection of the book of records showing a list of stockholders with their names, places of residence, and number of shares owned by each;''

and that an order was theretofore filed in the cause permitting the "relator the right through an accountant to make the inspection prayed for, and that the same has been accomplished, reserving'' the question of statutory penalty for refusal to permit said inspection.

From the foregoing findings of fact, the court concluded that the relator was entitled to a statutory penalty in the amount of two hundred dollars and

costs. Judgment was entered accordingly. The corporation and its president and manager have appealed from that judgment.

The interest of the respondent as a stockholder entitled him to the privilege of inspection of the books and papers of the appellant corporation. However, the statutory penalty can not be exacted in the case at bar under the following rule enunciated by us in *Brown v. Kildea,* 58 Wash. 184, 108 Pac. 452, 1135, where we construed the statute on which the present action is based:

"To subject the offending officer to the payment of the statutory penalty there must be a demand for an inspection of the book named in the statute, or a designated paper or papers lodged with and kept by the corporation and pertaining to its corporate business, and the party making the demand must have an interest in inspecting the paper and there must be a refusal to comply with the demand."

We held in the case cited that, as there was no evidence showing a demand for any designated paper, and no substantial evidence showing a demand for any paper or papers, or showing that the appellants were in possession of any paper, the defendants' motion for judgment notwithstanding the verdict should have been granted.

Appellants did not deny to respondent any right to which he was entitled as a stockholder of appellant corporation. There is no evidence that respondent made a demand for inspection of any particular book, paper or part of any book or paper. Our examination of the record (all of the material testimony is quoted below) elicits no more than that, desirous of selling his shares of stock, respondent demanded that a Mr. Reinhard be permitted to make an audit of the books of the corporation; and that the appellants, while con-

senting to an audit by any other accountant (that privilege was accorded respondent in the proceeding on the show cause order), refused to permit Reinhard to make the audit. Only two witnesses, respondent and Reinhard, testified on behalf of respondent. Johnston testified:

"Q. Now, Mr. Johnston, when did you move from the location of Welch's market? A. The 2nd of April. Q. What year? A. 1932; this year. Q. Shortly after that did you have a conversation with Mr. Burkhardt in his office? A. Yes, sir. Q. With reference to inspecting the books? A. I went into Mr. Burkhardt's office and met him there to settle the rent; the balance of the rent that I owed him up to the time . . . A. I think that was the 1st of April. It was on a Tuesday, if I remember. It was a few days after I opened up in my new place . . . A. I gave Mr. Burkhardt the check, exactly the same as what I had the amount for, and I said to him, I says: 'Louie, you told me once that any one that held stock in your company couldn't sell to an outsider, but it had to be sold to you, that you had an option on it,' or words to that effect. And he says, 'Well, I am not buying any stock now.' 'Well,' he says, 'I thought you didn't own any stock here; I thought this was a closed corporation.' He says, 'Didn't you sell your stock to Jack Steadwell?' I says, 'Yes, I sold five hundred dollars worth to Jack Steadwell then.' 'Well,' I says, 'You ought to know who the stockholders are in your company. I have got the certificates for it signed by you.' I says, 'Well, about the only thing I know to do is to have an accountant go over your books.' He says, 'All right.' As far as I remember, that was all of the conversation that I had with Mr. Burkhardt. Q. Then what did you do after that about inspecting the books? A. Well, I took it up with you and my accountant. My accountant went in to see Mr. Burkhardt, I believe, and he refused —Well, I come to you. I think we had to have an order before we reached that point. Q. Did you send any one in to examine the books? A. Yes, I asked my accountant to go in and examine—Q. Who was he? A.

L. F. Reinhardt. Q. How many times did you send him in there? A. He went in twice and he was refused. The second time I made an order for him for Mr. Burkhardt please to allow Mr. Reinhardt to inspect the books for me. He was refused. And the third time to make things absolutely sure that he had refused I went in with him. Q. What took place when you went in with him? A. I met Mr. Burkhardt and I says, 'Hello; I have got my accountant here to go over the books.' I don't remember just the exact reply he made, but he refused and says, 'I will go to court.' So we said no more to him and come up to your office. . . . CROSS-EXAMINATION. Q. Mr. Burkhardt objected to Mr. Reinhardt, did he not? He told you Mr. Reinhardt could not go over the books of the company? A. Well, he didn't say these words. He just said what I repeated there. He didn't mention any names. Q. Well, didn't he tell you at that time he couldn't go over his books? A. Not at that time. Q. Pointing to Reinhardt didn't he say: 'This man can't audit the books.' A. I don't know that he did. He said it in court afterwards, but not at that time. Q. What did he say that morning? A. I just told you what he said."

Mr. Reinhard testified:

"Q. Sometime in April, 1932, did you consult Mr. Burkhardt about examining the books of Welch's Market? A. I did. Q. What conversation took place at that time? A. I went in there and told him that I was ready to go over Welch's books for Johnston, and he said he wouldn't let anybody examine the books. And later on—I don't know whether it was the same day, but it was within a day or two, he agreed to let somebody examine the books, but he would pick his own auditor and Johnston could pay for it. Q. Who did he tell that to? A. He told that to me. I told him that that wasn't satisfactory to Mr. Johnston. Then I went in again and made a demand on the books, and he said 'No, we will go to court.' Then the last time Mr. Johnston and I went there together, and Mr. Johnston asked him if he was ready now to let me see the books, and he told him 'No' and we walked out. Q. How many times all together, then, did you make demand on Mr.

Burkhardt and were refused? A. I would say four times. . . . Cross-examination. Q. You told Mr. Burkhardt you had come over to audit the books for Johnston? A. Yes. Q. And he told you he wouldn't let you? A. He said no, he wouldn't have an audit, first.''

The only testimony in behalf of appellant was that of L. C. Burkhardt, who testified:

''Q. Now he moved out in April. Was there anything said by him to you about the affairs of the corporation before the time he moved out? A. No, sir. Q. When was the first time he said anything to you about seeing the books, or anything about the affairs of the company after he moved out? A. A few days after he moved out he came in and he says, 'Well, Louie, inasmuch as I moved out of here I have no more use for that stock, and I want you to buy it.' I says, 'What stock are you referring to?' 'Why,' he says, 'I am the owner of 98 shares.' 'Well,' I says, 'I supposed or thought that that thing was all straightened in the form of a rent proposition.' 'Well,' he says, 'I guess not; I own 98 shares.' 'Well,' I says, 'if you are the owner of 98 shares, why, all right; I guess I can't deny that, but you changed your mind considerable from what you said before.' He says, 'If you aren't going to buy that stock I want to send my auditor in here to audit these books.' He says, 'I haven't had an audit of those books for all these years.' I says, 'You had plenty of chance to find out what the loss and profit statements were, because those loss and profit statements have been taken out every four or five weeks since the company was organized,' and he wanted to know if I would let an auditor audit those books, and I told him no, that I would have to consult my attorney. So in the meantime Mr. Reinhardt came in and he said that he came for Mr. Johnston to audit those books. I told him then that I didn't see how he as a minor stockholder could come in there at any time and audit those books and that I would have to discuss that with my attorney before I would allow anything of that kind. Then finally he came in again and I told him

that if anybody audited those books it would have to be somebody outside of Mr. Reinhardt. So later he and Mr. Johnston came in and Johnston made the statement, he says, 'I am ready to go over those books, I am here with my auditor.' I says, 'You can't audit those books with Mr. Reinhardt.' I says, 'If you insist upon Mr. Reinhardt doing it you will have to get a court order.' With that, they turned around and walked out. Q. Did Mr. Johnston ever ask you to see or inspect any part of the books? A. No, sir; never. Q. The only thing he requested was an audit? A. The only thing he requested was an audit. Q. By Mr. Reinhardt? A. By Mr. Reinhardt. We didn't refuse no audit, but we refused an audit by Mr. Reinhardt. Q. And when this was brought on for hearing you conceded that right, that he could have an audit? A. Certainly. Q. Other than this particular one, and at his own expense? A. Yes, sir.''

*State ex rel. Fisher v. Greene,* 132 Wash. 283, 231 Pac. 798, cited by respondent, is not in point. In that case, the stockholder made a demand for an inspection of a particular book, a book named in the statute.

Upon respondent was imposed the burden of proving that he made such a demand as is contemplated by the statute, and that the appellants refused to comply with the demand. That burden the respondent did not sustain, hence he was not entitled to a recovery of the statutory penalty. The judgment as to costs should not be disturbed, in view of the determination in favor of the respondent of the question of ownership of certain shares of stock.

The judgment is reversed as to the award to the respondent of the statutory penalty of two hundred dollars. Neither of the parties will recover costs in this court.

BEALS, C. J., MITCHELL, BLAKE, and HOLCOMB, JJ., concur.